The Law Offices of
## Sheffy & Mazzaccaro, L.L.P.
35 North Main Street
Southington, CT 06489
Phone: 860-620-9460
Fax:   860-620-9348
Real Estate Fax: 860-620-1978

FILED
2004 JAN -9 P 4: 25
US DISTRICT COURT
BRIDGEPORT CT

A. Alan Sheffy
Joseph A. Mazzaccaro

John H. Kiefel

Robert J. Dunne

† Also admitted in
Pennsylvania

January 6, 2004

Honorable Stefan Underhill
United States District Court
Brien McMahon Federal Building
915 Lafayette Boulevard
Bridgeport, CT 06604

    **Re:    Edward W. Orr v. Reliance Standard Life Insurance Company**
            **C. A. No. 3:02 CV 1457 (SRU)**

Dear Judge Underhill:

Pursuant to the Court's Ruling and Order, dated December 23, 2003, please find enclosed supplemental information. In particular, this information is provided in response to the Court's invitation for the parties to augment summary judgment briefs for purposes of trial.

Accordingly, the following three exhibits are enclosed:

EXHIBIT H:      Form 971, as completed by Dr. Adam Perrin[1]

---

[1] Please note that, in regard to "Exhibit Labeling Protocol," the final exhibit in the Plaintiff's formal briefs was labeled "Exhibit F." Following the briefs, however, the Plaintiff then submitted a letter dated December 12, 2003, containing three medical reports which are now hereby designated as "Exhibit G." Accordingly, Form 971 (as completed by Dr. Adam Perrin above) is designated as "Exhibit H."

DESCRIPTION:   In further support of the Plaintiff's request for injunctive relief, this document accentuates the fragility of the patient, and states – among other things – the following:

> "The patient is totally and permanently disabled."

> "The patient's spinal cord injuries and disabilities are very serious, and are of a nature that precludes manipulation and/or examination by individuals unsupervised by a treating physician. In addition, the nature of the present injuries, and the risk of possible future injuries, is such that the patient cannot be expected to respond to normal testing protocols in regard to limb movement, task performance, and related."

In addition, please note that other documentation (from multiple sources, and already submitted to the Court) even indicates the following:

> "…[F]urther testing is unnecessary, *and would be harmful to the patient's health.*"

Sources:   RSL 32, as signed by Dr. Mary Guerrera

ALSO ON Dr. G224***, as signed by another independent physician, Dr. Robban Sica

Within the context of the Plaintiff's fragile condition, the aforementioned statements obviously indicate, quite frankly, that the patient has been through enough testing of any and all types, whether invasive or "non-invasive." In fact, what might be considered non-invasive to a "normal" patient would most certainly be considered invasive to a patient with serious SCI (spinal cord injuries), injuries which have been confirmed by Dr. Eric J. Woodard, Assistant Professor of Neurosurgery; Chief, Section of Spine Surgery; Harvard University.

EXHIBIT I: Half of a specially prepared 11" X 17" chart (along with forty-nine additional pages) sent to Reliance, on April 23, 2001, by the attorney handling Mr. Orr's LTD claim.

DESCRIPTION:   These overview documents were duly submitted, yet are missing from the claim file. Furthermore, and in terms of additional background information, these documents were mentioned at least once previously, for instance, in the *Plaintiff's*

*Reply to the Defendant's Response to the Plaintiff's Cross-Motion for Summary Judgment.*

EXHIBIT J:   An affidavit completed by Dr. Guerrera.


In summary, the aforementioned items are proffered in further support of Mr. Orr's request for the protection of the court, to include mandatory injunctive relief until age sixty-five, and disability benefits not to be terminated except by judicial decree of the United States District Court, District of Connecticut.

Given the extenuating circumstances presented by SCI, and the injunctive relief available to Courts acting as substitute administrators, the above request is made.

Very truly yours,

A. Alan Sheffy


Enc:   Exhibit H
       Exhibit I
       Exhibit J

cc:   Attorney Joshua Bachrach

SPINAL CORD INJURIES
Metropolitan Insurance Company
Form 971T-REV1992 DOW

Patient Name: _Edward W. Orr_

S. S. Number: _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_

Date of Birth: _3-11-57_

**STATEMENT OF DISABILITY, UNDUE BURDEN, AND PRECLUSION OF EXAMINATION BY INDIVIDUALS UNSUPERVISED BY TREATING PHYSICIAN, OWING TO THE NATURE OF THE PRESENT INJURIES, AND THE RISK OF POSSIBLE FUTURE INJURIES**

(1) The patient is totally and permanently disabled:

☒ AGREE   ☐ DISAGREE

(2) Invasive testing has already been completed (if available, please attach Form 14B or equivalent):

☒ AGREE   ☐ DISAGREE

(3) The patient requires the following mobility aids:

☐ a. Wheelchair (standard)

☐ b. Wheelchair (45-degree recline)

☒ c. Wheelchair (170-degree incline or greater)

(4) The patient cannot sit up for a time period of more than thirty minutes:

☒ AGREE   ☐ DISAGREE

(5) The patient's spinal cord injuries and disabilities are very serious, and are of a nature that precludes manipulation and/or examination by individuals unsupervised by a treating physician. In addition, the nature of the present injuries, and the risk of possible future injuries, is such that the patient cannot be expected to respond to normal testing protocols in regard to limb movement, task performance, and related.

☒ AGREE   ☐ DISAGREE

Thank you for completing this form.

Signature: _[signature]_   Date: _12/30/03_

Name of physician completing this form (please print or type): _____

Taxpayer ID Number: _06-1472743_   Telephone Number: _860-374-7058_

Address: _13 M. Fairchild Rd_
_Durham, CT 06422_

971T-REV1992 DOW

REPRESENTATIVE CROSS-REF. TO THE <u>BOTTOM</u> HALF OF THE OVERSIZED WALL CHART

**CONTENTS** (F. O. 1-5)

● → EXHIBIT 24 / DR. HAUPTMAN'S 60 PAGES
49 P. ATTACHED    (BOTTOM HALF OF CHART)

● → EXHIBIT 24 / DR. HAUPTMAN'S 60 PAGES
49 P. ATTACHED    (BOTTOM HALF OF CHART)

● → EXHIBIT 24 / DR. HAUPTMAN'S 60 PAGES
49 P. ATTACHED    (BOTTOM HALF OF CHART)

● → EXHIBIT 24 / DR. HAUPTMAN'S 60 PAGES
49 P. ATTACHED    (BOTTOM HALF OF CHART)

● → EXHIBIT 24 / DR. HAUPTMAN'S 60 PAGES
49 P. ATTACHED    (BOTTOM HALF OF CHART)

OneStep

FORM 14 B ATTACHMENT
(PARTS 1 - 12)

EX. 24   (F.O.1/5)
49 p. ATTACHED:
OTHER BULKY EXHIBITS
MAY BE PURCHASED UPON
REQUEST / C.R. Hayrman/60/04

| # | Name | Description | ✓ |
|---|---|---|---|
| 1 | Employer/Insurer's initial report | Required accident report (WC) | |
| 2 | Employer DOT | Required accident report (EMP/ER/DOT) | ✓ |
| 3 | Dr. Steele | Required referring | ✓ |
| 4 | Dr. Khawaja | Required referring | ✓ |
| 5 | Dr. DeNayer | Required neurologist | ✓ |
| 6 | Dr. Kost | Required physiatrist (physical medicine specialist) | ✓ |
| 7 | Dr. Kaplan | Required physiatrist (physical medicine specialist) | ✓ |
| 8 | Dr. Maroon | Required neurosurgeon | ✓ |
| 9 | Dr. Lodico | Required pain management/ neurosurgeon referral | ✓ |
| 10 | Invasive tests | Required neurosurgeon referral | ✓ |
| 11 | Drs. Pilon/Galbraith | Required dentist / oral surgeon | ✓ |
| 12 | Drs. Guerrera/Woodard | Required primary care / neurosurgeon | ✓ |

01/17/01   14:16   ☎860 628 ????   ELLIOTT-STANEK   ☒001/006

Social Security Administration
Retirement, Survivors and Disability Insurance
Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date: January 8, 2001
Claim Number: 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HA

EDWARD A. ???
146 GREYSTONE DR
PLANTSVILLE CT 06479

You are entitled to monthly disability benefits beginning December 1999.

**The Date You Became Disabled**

We found that you became disabled under our rules on June 25, 1999.

However, you have to be disabled for 5 full calendar months in a row before you can be entitled to benefits. For these reasons, your first month of entitlement to benefits is December 1999.

**When We Will Pay and When**

- You will receive $19,???.?? around January 14, 2001.

- This is the money you are due for December 1999 through December 2000.

- Your next payment of $1,697.00, which is for January 2001, will be received on or about the third Wednesday of February 2001.

- After that you will receive $1,697.00 on or about the third Wednesday of each month.

- Later in this letter, we will show you how we figured these amounts.

The day we make payments on this record is based on your date of birth.

See Next Page

Edward W. Orr
145 Greystone Drive
Plantsville, CT 06479

December 8, 2000

Dr. Youseff Khawaja
16 Cornerstone Court
Main Street
Plantsville, CT 06479

RE:
I. Your 12-8-99 referral to Dr. Kost (as discussed with Medspan [the insurer] and with your office, the following timeline is provided, as a follow-up courtesy, to help facilitate reimbursement)

II. All documents below also accompany, per Dr. Guerrera's office, Form SCI-14B et al, wherever enclosures/attachments ["please enclose summary of results"] are requested for Reliance Insurance Company and/or for Medspan (see also Attny. Sciota/3-1-00 letter).

III. The above helps facilitate understanding of the diagnoses and the progression of treatment.

IV. Please note that this explanatory cover letter is part of the aforementioned Form SCI-14B, and is also included in "Part 12" of the attachments.

V. Additionally, please note that the SCI-14B attachments include chain-of-referral information (this also facilitates insurance reimbursement, including anticipated Medicare/Medicaid)

---

**TIMELINE AND DIAGNOSES SHOWN IN PART "B" BELOW**

---

PART "A" IS PRIMARILY A ROSTER
OF YOUR REFERRALS AND THE
PHYSICIANS INVOLVED

A. Records from the employer, and from 11+ physicians, as enclosed in the attached sorter file

1. Employer's/Insurer's Required Workers' Compensation Report of Accident Necessitating Hospitalization and/or Medical Attention (10-25-95 DOA, with form filed on 10-27-95) (1 page)

Cover letter: Page 1 of 9
Attachment page-count: 253

2.  Employer (Medspan provider + Reliance Standard provider) <u>DOT</u> classification

    a.  Employer's one-page cover letter of 9-1-99, which included the following seven pages of attachments for "Senior Product Manager":

        i.  <u>Reliance Standard Form, filled out by employer, with a direct mention of The Worker's Comp Carrier, for whom Medspan became responsible when not paid</u>

        ii. <u>Reliance Standard Form, showing also a formal mention of Medspan itself</u>

        iii. "Light Duty" job classification

    b.  One-page letter (3-1-00) from Atty. Sciota about coordination of multiple insurance companies

    c.  Total of above: 9 pages

3.  Dr. Steele <u>(who had a Connecticut practice, and then moved to Virginia; 7-14-99 summary letter / see diagnoses in Part B below)</u>, and who referred me to you (1 page)

4.  <u>Your</u> records (7 pages, including three pages with four-plus referrals, even including <u>out of state</u>)

5.  <u>Dr. Denayer</u>, to whom you referred me, per <u>your</u> medical record of 7-21-99 (58 pages)

6.  <u>Dr. Kost (he performed an OPERATION, see Part B below)</u>, to whom <u>you</u> referred me, per <u>your</u> medical record of 12-6-99 (1 page)

7.  <u>Dr. Kaplan (dozens of treatments)</u>, to whom both <u>you</u> and Dr. DeNayer referred me, per Dr. Kaplan's <u>formal mention of the referral on Kaplan's 9-16-99 report</u> (33 pages)

Cover letter: Page 2 of 9
Attachment page-count: 253

8. <u>Dr. Maroon</u> (located out of state/Pennsylvania), to whom Dr. Kost referred me; see referral in Maroon letter of 2-1-00 (2 pages)

9. <u>Dr. LoDico</u> (located out of state/Pennsylvania), partner of Maroon (above); <u>see also numerous formal referral notations, from Maroon to LoDico</u>, in 2-3-00, 2-18-00, and 3-3-00 records of LoDico. (38 pages)

10. <u>Special CT-Scans + diagnostic films from single-blind study; INVASIVE TESTS</u> (14 pages)

> The above tests show as, both Dr. LoDico and <u>Dr. Kavic</u> (both in Pittsburgh; the latter having been referred by Dr. LoDico) described, <u>the main problem causing total disability</u>.

11. <u>Drs. Pilon + Galbraith</u> (oral surgeon/dentist, for face/jaw injuries), also additional specialists to whom <u>you</u> specifically referred me, per your medical record of 12-8-99 (1 page)

12. <u>Dr. Woodard,</u> Harvard Neurosurgeon providing second opinion on invasive diagnostic procedures – approval granted for LoDico's procedures, et al. (88 pages)

   a. See express mention of invasive Discogram procedure, and the sending <u>back</u>, from Harvard, via Dr. Woodard, to Dr. LoDico

   b. See also, as part of these 88 pages, the 2-page coordinational letter from <u>Dr. Guerrera</u>, specifically mentioning both Harvard's and Pittsburgh's recommendations, leading to total disability. Accordingly, both Dr. Woodard's and Dr. Guerrera's office then assisted in filing for Social Security Benefits: See attached SSA Disability Report Form SSA-3368-BK, plus State of Connecticut Disability Determination Services Form and medicals.

   c. In regard to "the chain of command," please note that Dr. Woodard, in Massachusetts, was referred by Dr. DeNayer, to whom you of course had referred me.

13. <u>Total ATTACHMENT pages above:</u> 253



B. Progressive diagnoses as more medical tests, as recommended by you and your referrals, were performed; please note that *DIAGNOSES SHOWN BELOW ARE ITALICIZED.*

1. Dr. Steele (7-14-89) diagnosed, from the very beginning:

   a. "*Spinal stenosis*"

   b. "*Discogenic and vertebral bony disease.*"

2. You diagnosed "*possible fibromyalgia*," per your medical records of 8-23-99.

3. You (on 10-14-99 record) and Dr. DeNayer (on 9-27-99 record – Dr. DeNayer is the neurologist to whom you also referred me) THEN WENT ON TO DIAGNOSE "*SCIATIC IRRITATION*," AND "*BILATERAL PIRIFORMIS SYNDROME*."

4. Dr. Kost, on 1-06-00, diagnosed (as your referral) "*sacroiliitis*," and confirmed your above diagnoses, and also, of course, the diagnoses of Dr. DeNayer, who concurred with you.

5. Dr. DeNayer diagnosed ALSO (9-27-99 et al)

   a. *Geniculate neuralgia (face, etc.)*

6. Dr. Kaplan, who treated me dozens of times in 1999, and to whom you referred me in 1999, diagnosed, on his signed record of 10-12-99 the following:

   a. *Lumbar disc bulges*

   b. *S-1 inflammation*

   c. *Piriformis syndrome*

   d. Please note that Dr. Kaplan also documented bone fragments and a worsening of symptoms

        <u>**between** the first part of 1996 and the second half of 1999 (during which time I was still able to work, although I did miss more than 40 days of work per year, because of disabilities).</u>

   e.   Please note that Dr. J. Cannon's office may also be contacted for several hundred pages of additional records, in the 1996-1999 timeframe, records that are not included here.

7. <u>Drs. Pilon/ Galbraith</u> (oral surgeons/dentists), to whom <u>you</u> referred me, diagnosed – because of the multiple facial impacts from the 120mph collision – "*temporomandibular joint and myofascial dysfunction,*" AND CONSTRUCTED A SPECIAL OCCLUSAL SPLINT TO BE WORN NEARLY 24 HOURS PER DAY (see descriptive letter of 6-7-00/Dr. Pilon).

8. <u>Next, I returned, again expressly per your referral, to Dr. Kost, who performed an OPERATION, on 1-06-00,</u> as follows:

      Right and left sacroiliac joint injections <u>under fluoroscopic guidance</u>

9. Dr. Kost, your referral, <u>then referred to Pittsburgh physicians LoDico/Maroon, for continued treatment that he could NOT provide, since the disability had not improved, in spite of the aforementioned operation.</u>

10. Please see enclosed <u>test results</u> and letters from Pittsburgh physicians LoDico/Maroon (<u>including a direct medical follow-up letter from PA to CT, thanking Dr. Kost, on 2-1-00, for his referral from out of state</u>)

11. Diagnoses from Dr. Maroon included:

   a.   *Lumbar spinal <u>stenosis</u>*

   b.   *Cervical <u>spondylosis</u>* (see 2-01-00 medical record)



12. Subsequent to 2-01-00, <u>invasive</u> tests were then performed in Pittsburgh, to even further narrow down the diagnoses.

13. Further diagnoses in Pittsburgh were based on INVASIVE TEST STUDIES, many of which included extensive imaging dyes

14. Dr. LoDico also performed other special invasive procedures, including transforaminal epidural injections.

15. Dr. LoDico diagnosed:

> a. "*Lumbar radicular <u>syndrome in the S1 and L5 distribution</u>*" (2-3-00)
>
> b. "<u>*Central spinal stenosis producing lower radicular syndrome*</u>" (2-18-00)
>
> c. "<u>*Greatly sensitized disc with a posterolateral tear at L5-S1*</u>" (3-3-00)

16. On 2-29-00, **Dr. Eric Woodard (Harvard Neurosurgeon) <u>concurred</u>** with Dr. LoDico's 2-3-00 and 2-18-00 results, and also concurred with the necessity of needing to perform the 3-3-00 discogram test, along with related CT-scan and imaging studies.

17. Dr. Woodard, <u>in addition to concurring with Dr. LoDico</u>, diagnosed, on 2-29-00, ALSO:

> a. *L5 dysesthetic syndrome*
>
> b. *C6-7 dysesthetic pain syndrome*

18. As a follow-up, in a 3-03-00 medical record, LoDico stated:

> a. "*Incapacitated and totally disabled*"
>
> b. "*Disc with posterolateral tear at L5-S1*"

> c. "It is of note that <u>the single blind nature of this test</u> and the reproducible results during it, should be considered <u>objective evidence</u> that the *disc derangements* presently cause your pain."

19. On 4-6-00, Dr. LoDico further clarified options by stating, "I would consider you temporarily totally disabled <u>until such a surgical option has been addressed</u> (referring to 'fusion at the L5-S1 level')."

20. <u>Dr Woodard</u>, the Harvard neurosurgeon, was therefore consulted about the possibility of any form of surgical intervention at all. The result? He ruled out any form of surgical intervention. In addition, other neurosurgeons, ... including <u>Drs. Maroon/Whiting/Elkadi</u>, were consulted, and they concurred with Dr. Woodard, of Harvard.

21. <u>Dr. Guerrera</u>, in her coordinational summary letter of 5-26-00, prepared the following synopsis:

> "Mr. Orr recently sought expert consultation for the possibility of surgical intervention to improve relieve symptoms, both in Pittsburgh and Boston. Both neurosurgeons recommended <u>against</u> any surgical intervention."

22. <u>In addition to perusing the aforementioned diagnoses, from the physicians to whom you referred me, Dr. Khawaja, it is also instructive to see – as provided in Dr. Guerrera's letter of 5-26-00, and for the benefit of Medspan/Reliance and other parties – the following injury roster, taken word for word from the letter:</u>

> a. Concussion, a broken neck, a broken back, multiple lacerations, bruises, much soft tissue damage.
>
> b. Multiple impacts to the face, chest, neck and back regions were sustained with some of these

> impacts causing bone breakage, and some impacts causing bone dislocation and/or related chest, jaw, disk, and other accident-related problems.
>
> c. He received these injuries in the following areas: Jaw, neck, face, head, back, legs, feet, chest.
>
> d. Injuries from the neck also caused serious problems in the hands and arms.
>
> e. Mr. Orr's injuries have created a period of total disability.

Dear Dr. Khawaja:

Per Dr. Guerrera, please see the above timeline, and the enclosed records for Form 14B et al. I would also like to relay thanks from both Dr. Guerrera's office and myself for your four-plus referrals – to Drs. Kost, DeNayer, Galbraith/Pilon, Kaplan, et al.

If, of course, additional information is required, please do not hesitate to contact Dr. Guerrera's office staff, as further documents (in addition to the 253 pages of attachments described above) are obviously available for review by either yourself, or by Medspan, Reliance, et al.

Now that at least the diagnosis is definitive – which was certainly NOT the case at the beginning – hopefully any remaining reimbursement and related issues can be expeditiously resolved. As discussed, therefore, please expect possible continued interaction from Dr. Guerrera's office.

Sincerely,

*[signature]*

Edward W. Orr

EWO/jkr/cr5632-097-a

Cover letter: Page 8 of 9
Attachment page-count: 253