IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD W. ORR | : CIVIL ACTION |
| | : |
| v. | : No.: 302 CV 1457 (SRU) |
| | : |
| RELIANCE STANDARD LIFE | : |
| INSURANCE COMPANY | : |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PERMANENT INJUNCTIVE RELIEF**

**Introduction**

Plaintiff has filed a 40 page brief and thousands of pages of documents in support of his request for injunctive relief but failed to include the most important piece – authority which allows this court to grant the relief he has requested. In fact, it is difficult to even understand what specific relief is being requested since plaintiff's brief speaks in generalities rather than specifics and is at times unintelligible.

It appears that plaintiff is asking this court to replace Reliance Standard as the claim administrator under the plan. In fact, in recent correspondence to the court, counsel for plaintiff asked the court to become the "substitute plan administrator."[1] According to plaintiff, Reliance Standard should not be allowed to investigate his claim in any way. According to plaintiff, Reliance Standard should not even be able to ask any questions of Mr. Orr, let alone request medical records or conduct a medical examination if it deems it necessary. Instead, it is Mr. Sheffy who will determine which records are important enough to submit and, if the claim is denied based on these records, plaintiff does not have to exhaust his administrative remedies.

---

[1] Even this statement is incorrect as Reliance Standard is not the plan administrator. Instead, it is a fiduciary of the plan to which the plan administrator delegated the responsibility to decide eligibility for benefits.

981990 v.1

Plaintiff's request for injunctive relief flies in the face of the ERISA statute, the law of this Circuit as well as the language in the Reliance Standard policy. In fact, the motion is so frivolous as to warrant the imposition of fees against plaintiff.

### Legal Authority

1. <u>This Court Lacks Jurisdiction To Hear Plaintiff's Motion</u>

While plaintiff's motion consists of a 40 page brief, an equally lengthy motion and is accompanied by thousands of pages of documents, defendant only needs to cite to two cases to defeat the motion. Those cases are *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 140-41 (2nd Cir. 2000) and *Peterson v. Continental Cas. Co.*, 282 F.3d 112, 117 (2nd Cir. 2002). As explained in these cases, this court lacks jurisdiction to adjudicate the issues in plaintiff's motion since there is no dispute presently between the parties.

In *Jones,* the plaintiff asked the court to decide whether she was entitled to benefits beyond the initial 24 month period. The plaintiff also asked the court to retain jurisdiction over future decisions by the plan. The same requests are being made by the plaintiff in this case.[2] As the Second Circuit explained in *Jones,* the court lacked jurisdiction over the "dispute" since there was no actual controversy. *Jones,* 223 F.3d at 140-41.

As the Second Circuit discussed in *Jones,* under Article III of the Constitution, federal courts do not have jurisdiction over a dispute unless the plaintiff has suffered "some actual or threatened injury as a result of the punitively illegal conduct of the defendant." *Id., quoting Blum v. Yaretsky,* 457 U.S. 991, 999 (1982). Since the plaintiff in *Jones* had not exhausted her

---

[2] Reliance Standard has never made a decision on whether Mr. Orr is totally disabled from any occupation which is the definition applicable to his claim after benefits have been paid for twenty-four months.

981990 v.1

2

administrative reviews as required under ERISA, the court held that the claims were premature and the court lacked jurisdiction. *Id.*

Plaintiff attempts to limit the exhaustion requirement when he argues that it does not apply to *de novo* reviews. Neither the Second Circuit nor any other court has ever held that the exhaustion requirement only applies when the court's review is deferential. Nor do the goals of exhaustion support plaintiff's argument. As stated by the Second Circuit in *Peterson* without any qualification, "absent a determination by the plan administrator, federal courts are without jurisdiction to adjudicate whether an employee is eligible for benefits under an ERISA plan." *Peterson*, 282 F.3d at 117. In *Peterson,* the court described the role of federal courts as being "narrow" and, contrary to plaintiff's argument, specifically stated that courts should not function as "substitute plan administrators." *Id. See also Miller v. United Welfare Fund,* 72 F.3d 1066, 1071 (2nd Cir. 1995).

Numerous decisions from the Second Circuit and district courts within it have repeatedly stated that a claimant generally must exhaust plan remedies before seeking judicial relief. *See Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 594 (2nd Cir. 1993); *Chapman v. Choicecare Long Term Disability Plan,* 288 F.3d 506, 511 (2nd Cir. 2002); *Millane v. Becton Dickinson & Co.,* 84 F. Supp.2d 282, 288 (Conn. 1999); *Steinberg v. Obstetrics-Gynecological & Infertility Group, P.C.,* 260 F. Supp.2d 492, 498 (Conn. 2003). As explained in *Kennedy,* one of the purposes of the exhaustion requirement is to "uphold Congress' desire that ERISA trustees be responsible for their action, not federal courts." *Kennedy,* 989 F.2d at 594. *See also Davenport v. Abrams,* 249 F.3d 130, 133 (2nd Cir. 2001). These courts also recognized that the exhaustion requirement is necessary so as to provide the court with a clear record of the action that has transpired if a lawsuit ensues. *Id.*

Based on the law cited above, there is no basis for plaintiff to ask this court to make the initial decision on his eligibility for benefits beyond 24 months. Nor is there any basis for plaintiff to ask this court to excuse the exhaustion requirement in the event defendant ever makes the decision that plaintiff is no longer entitled to benefits. *Jones* also defeats plaintiff's argument that this court should retain jurisdiction. Since there is currently no dispute between the parties, this court lacks jurisdiction and plaintiff's motion must be denied.

2. Plaintiff is Not Entitled to an Injunction Which Would
   Essentially Strip Defendant of its Ability to Investigate the Claim

This leaves plaintiff's requests that this court enjoin defendant from ever interviewing him, seeking medical information or conducting an examination. For the same reasons, exhaustion applies to these issues as well. As stated by the Supreme Court of the United States and quoted in *Kennedy* during the court's discussion of the exhaustion requirement, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *See Myers v. Bethlehem Ship Building Corp.*, 303 U.S. 41, 50-51 (1938). Thus, the Supreme Court of the United States and the Second Circuit in *Kennedy* have held that exhaustion of administrative remedies still applies when there is a "threatened injury," which is all that has been alleged by this plaintiff.

3. The Policy Authorizes Reliance Standard to
   Conduct an Examination and Requires Plaintiff
   to Continue to Submit Proof of Disability

At this point in the discussion, it is important to look at the language in the policy. The insuring clause in the policy states that a "monthly benefit" is only payable if the claimant submits "satisfactory proof of total disability to [Reliance Standard]." Based on this language, plaintiff is under a continuing obligation to provide proof of eligibility to Reliance Standard. *See Davidson v. Prudential Insurance Company of America,* 953 F.2d 1093, 1096 (8th Cir. 1992);

981990 v.1

4

*Miller v. Metropolitan Life Insurance Company*, 925 F.2d 979 (6th Cir. 1991). Nor can plaintiff select which records it wants Reliance Standard to review. If Reliance Standard believes that additional information is needed to review the claim, plaintiff is obligated to provide it. If he fails to do so, Reliance Standard is justified in refusing to pay additional benefits. *See Miller, supra.*

The Reliance Standard policy also gives Reliance Standard the right to have plaintiff examined. Under the law of this Circuit, this portion of the policy as well as the other requirements in the plan must be enforced unless they are ambiguous. *See Fay v. Oxford Health Plan,* 287 F.3d 96, 104 (2nd Cir. 2002). Here, the language unambiguously permits Reliance Standard to have the plaintiff examined. Reliance Standard recognizes, however, that such a request must be reasonable. Plaintiff is asking this court to decide whether an examination is reasonable even before one has been requested and, more important, before Reliance Standard has had an opportunity to even develop the record on this subject as required under the law.

There is no actual controversy before this court regarding an examination as none has been requested by Reliance Standard. In any event, the language in the Supreme Court decision in *Myers* as well as the other cases cited above, also require plaintiff to exhaust his administrative reviews with respect to any possible examination. In the event an examination is requested by Reliance Standard plaintiff could refuse to attend. If that occurs, Reliance Standard would have the opportunity to develop a record on why it believes the examination is reasonable and necessary and to respond to plaintiff's argument that he might suffer an injury during the exam. In the event benefits are eventually denied based in part on plaintiff's refusal to attend an examination, the court would then have the opportunity to review the entire record and decide

whether plaintiff's refusal was reasonable. Thus, plaintiff will suffer no harm by exhausting his administrative remedies as he is required to do under ERISA.

4.   Plaintiff Cannot Sustain His Burden of Proving that
     <u>Exhaustion would be Futile.</u>

As recognized by the Second Circuit, a claimant seeking to avoid the exhaustion requirement must mke a "clear and positive showing" that pursuing his administrative reviews would be futile and that the purposes behind the exhaustion requirement are not being furthered. *See Kennedy, supra.* As previously stated, those purposes include the desire of Congress that ERISA trustees make eligibility decisions, not federal courts, that a sufficiently clear record exists prior to litigation and to promote the consistent treatment of all benefit claims. *Id.* Plaintiff falls woefully short of satisfying his burden that these purposes would not be served by requiring him to exhaust his administrative reviews.

Based on the overwhelming authority cited above, it is clear that plaintiff's motion for injunctive relief must be denied. Significantly, plaintiff fails to point to a single case which is on point and which would allow the court to wrest from Reliance Standard the claim functions, including the right to obtain additional information, interview the claimant and have him examined. Surely, if there was a case on point, plaintiff would have cited to it somewhere in his 40 page brief.

In support of his request for injunctive relief, plaintiff cites to various provisions in the policy and argues how Reliance Standard *could* use them to deny further benefits. These are strictly hypotheticals and have no bearing in fact or on this particular case. Does this court truly believe that Reliance Standard would deny a benefit claim for an individual suffering from a coma because that person could not be interviewed? This argument is absurd. Nor has plaintiff

cited to a single case in which Reliance Standard has denied a benefit claim based on one of his hypotheticals.

It is not even necessary for this court to review the remaining arguments of plaintiff since they are legally insufficient. Nevertheless, Reliance Standard will respond to plaintiff's arguments regarding the prior handling of the claim. Before doing so, however, it is important to note that this prior claim handling is irrelevant to the issues presently before the court. The question before Reliance Standard when it denied the claim previously was whether plaintiff was totally disabled from his own occupation. The question now before Reliance Standard is whether plaintiff is totally disabled from any occupation.

One of the more absurd arguments raised by plaintiff is that Reliance Standard breached its fiduciary duties by denying the claim without an IME. It is absurd because plaintiff seems to be arguing that an IME is required before a claim can be denied but also argues that Reliance Standard cannot conduct an IME when evaluating whether he is disabled from any occupation. More important, plaintiff's argument is legally incorrect. It is the claimant's burden to prove eligibility. Therefore, courts have held that a plan has no obligation to conduct an examination before discontinuing benefits. *See Wallace v. Reliance Standard Life Ins. Co.*, 318 F.3d 723 (7th Cir. 2003).

Reliance Standard strongly disputes plaintiff's statements regarding its earlier review of his claim. This court already has a copy of the complete administrative record and can judge this issue for itself. However, even if the court believed that there were some problems with the earlier claim handling, and Reliance Standard disputes that claim, it does not provide a basis for the court to essentially throw away the policy and the law applicable to ERISA claims.

Citing to decisions from the Supreme Court of the United States, plaintiff argues that he is entitled to an equitable remedy in the form of an injunction based on Reliance Standard's alleged breach of fiduciary duty. First and foremost, Reliance Standard strenuously disputes that it breached its fiduciary duty to plaintiff. Second, to the extent that any breach occurred, and this is denied, plaintiff has already received any relief to which he is entitled through the reinstatement of benefits. Third, and most important, nothing in the cases cited by plaintiff even remotely to support his argument.

In support of his request for injunctive relief, plaintiff cites to *Varity v. Howe*, 516 U.S. 489 (1996) and *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). In *Varity*, the Court held that a claimant may not seek equitable relief under § 502(a)(3) of ERISA if relief is available under another section of the statute. Here, § 502(a)(1)(B) of ERISA provides all of the relief available to plaintiff. Nor does this section allow the court to grant the relief requested by plaintiff. The *Knudson* case clearly has no application to the issues before this court as it involved whether a subrogation claim is a claim for legal or equitable relief.

On page 27 of his brief, plaintiff argues that a "finding of permanent and total disability is a question of fact, not ERISA law." Reliance Standard does not dispute this assertion. However, the Reliance Standard policy does not provide "permanent and total disability" benefits. More important, the Second Circuit has held that a court may not address the question of whether a claimant is permanently disabled or disabled from any occupation if there has been no administrative decision. *See Jones* and *Peterson, supra*. Here, there has been no such decision.

In the next section of the brief, plaintiff returns to his erroneous argument that this court can excuse his obligation to seek relief through the administrative remedies. First, plaintiff cites

to the Sixth Circuit decision in *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516 (6th Cir. 2003). Counsel for plaintiff fails to tell the court that *Darland* is no longer valid law. The Sixth Circuit's decision in that case was abrogated by the Supreme Court of the United States in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). In fact, the decision in *Nord* is based on the precise argument raised by this plaintiff regarding the Social Security decision. In *Nord*, the Court recognized the differences between ERISA plans and Social Security disability decisions. For instance, the Social Security Administration must give deference to the treating physician. The Court stated that there is no such requirement under ERISA. Therefore, plaintiff's reliance on *Darland* is misplaced. Moreover, counsel for plaintiff should be more careful in citing cases that are no longer valid law.

Plaintiff next misstates the holding in *Hall v. UNUM Life Ins. Co.*, 300 F.3d 1197 (10th Cir. 2002). According to plaintiff, the district court in *Hall* "awarded injunctive relief for future benefits." See brief of plaintiff at page 31. This statement is misleading. The district court in *Hall* did not enter injunctive relief ordering the defendant to pay all future benefits to the claimant. Instead, the court entered injunctive relief for the payment of future benefits "*so long as her disability continues.*" See *Hall*, 300 F.3d at 1200.

Finally, plaintiff cites to the unpublished district court decision in *Kinstler*. While the district court in *Kinstler* may have stated that the court would retain jurisdiction, that decision cannot trump the law of the Second Circuit. In both *Peterson* and *Jones*, the Second Circuit stated that the district courts did not have continuing jurisdiction. It is that law which controls this case.

Plaintiff continues with his creative ways when he discusses the holding in *Dishman v. UNUM Life Insurance Company*, 269 F.3d 974 (9th Cir. 2001). The plaintiff inserts language

into *Dishman* as though it were the court's ruling. In fact, *Dishman* has nothing to do with the requests being made in this case. At issue in *Dishman* was whether a claim for tortious invasion of privacy is preempted by ERISA. Here, there has been no tortious behavior on the part of defendant, in fact, Reliance Standard has not had the opportunity to evaluate the benefit claim. Additionally, while plaintiff states that the court in *Dishman* granted a permanent injunction against the plan discontinuing further benefits, plaintiff fails to provide us with a cite. Nor is this discussed in the Ninth Circuit decision. More important, plaintiff cannot rely on Ninth Circuit law to avoid the law of his own circuit.

During the course of this Motion, plaintiff has raised additional issues in an effort to place Reliance Standard in a bad light before the court. For example, plaintiff stated that the settlement check sent to Mr. Orr "bounced." This statement is absolutely false. As previously stated, Mr. Orr deposited the check on March 3, 2004. The check cleared Reliance Standard's account the following day. It is obvious from the documentation previously submitted by defendant that plaintiff's own bank withheld the funds for approximately two weeks. Reliance Standard cannot be faulted for this action.

Counsel for plaintiff also argued without any explanation that the benefit amount was incorrect. Plaintiff was correct in this regard as he was actually overpaid by one hundred dollars for two months. Since the mistake was on the part of Reliance Standard, it is not asking for the money to be returned. Had counsel for plaintiff simply picked up the phone and asked about the discrepancy, he would have received this explanation.

While counsel for plaintiff asked the court to look at the behavior of defendant, it is his own conduct that needs to be examined. Throughout his brief counsel for plaintiff misstates the holdings in cases and cites the cases that are no longer valid law. More recently, counsel for

plaintiff pushed the boundaries of acceptable behavior when he wrote directly to Reliance Standard rather than its counsel regarding this claim. *See* letter dated April 27, 2004 from Alan Sheffy to Tom Tucker of Reliance Standard, a copy of which is attached as Exhibit "A". Worse yet, counsel for plaintiff provided legal advice to the claim examiner. *See* Exhibit "A". Specifically, Mr. Sheffy told Mr. Tucker that "Reliance is estopped from making further requests or inquiries of Mr. Orr under the terms of the policy." *See* Exhibit "A". This behavior is entirely unacceptable and may warrant further attention.

Finally, plaintiff has dumped on Reliance Standard and the court four thousand pages of documents which have not previously been considered. According to plaintiff, these medical records establish that he is and will forever be totally disabled and there is no need for any further reviews of its claims. As stated in the beginning of this brief, this argument is unsupported in the law. It also defies commonsense. In *Nord*, the Supreme Court of the United States held that ERISA plans are not required to give deference to the opinions of treating physicians. Implicit in that holding is the right of the plan to question the opinions of a treating physician and obtain additional information.

Reliance Standard also has good reasons to question the diagnoses that are not being made. To understand this, it is important to look at the history of the claim. Plaintiff was involved in a car accident on October 25, 1995. Following his recovery, plaintiff returned to work for a number of years prior to submitting a claim on June 25, 1999. That claim was based on diagnoses of chronic pain and fibromyalgia. Now, however, plaintiff is offering a number of new diagnoses in support of the disability claim. Plaintiff asks this court to award him "permanent" benefits even though Reliance Standard has not had a chance to address these

claims. Apparently, plaintiff does not believe that this one-sided presentation of the evidence is a problem.

As stated earlier in this brief, Reliance Standard understands that it can only conduct an IME if the request is reasonable. Here, a reasonable basis may exist. In the short amount of time that it had, Reliance Standard had the reasonably submitted medical records reviewed by Andrew Carollo, M.D., an Orthopedist. Dr. Carollo disputes the assertion by plaintiff that he suffers from spinal cord dysestesic and dysreflexic syndrome. A copy of the report is attached as Exhibit "B." Dr. Carollo also noted that there are discrepancies in the medical records. For example, Mr. Orr told one of his doctors that he could not walk unassisted but failed to tell this to others who were treating him. Nor did Dr. Carollo believe that plaintiff risks any harm from being examined, let alone questioned. These issues can be explored in greater detail and a more detailed record developed on them if plaintiff exhausts his administrative reviews as he is required to do.

Plaintiff's motion can be summed up in the following way. Plaintiff asks this court to review only his evidence, not allow Reliance Standard to gather any evidence and then have the court to make a decision on eligibility based on this one-sided evidence. Not only is this request defy commonsense, it is also contrary to the law of this Circuit. It is Reliance Standard, not the court, that must make the initial decision on eligibility. It is also Reliance Standard that must review any adverse decision administratively prior to plaintiff filing suit. Contrary to plaintiff's entire theory, the exhaustion requirement applies to all ERISA cases. The purposes of exhaustion include the desire of congress that ERISA fiduciaries and not the federal courts make the decisions, establishing an administrative record in the event of litigation, reducing the number of frivolous lawsuits, promoting the consistent treatment of claims and to minimize the costs involved. *See Kennedy, supra.* Plaintiff motion ignores these goals.

**Conclusion**

For the reasons stated above, plaintiff's request for injunctive relief must be denied. Under the law applicable to this claim, it is clear that Reliance Standard must make an initial decision on the claim before the court has jurisdiction. That decision includes whether to obtain additional information or have the claimant examined. Mr. Orr can still refuse those requests and, if the claim is denied, file suit arguing that the requests were unreasonable. However, since there is no decision presently before the court, plaintiff's motion must fail.

Respectfully submitted,

RAWLE & HENDERSON LLP

By: *Gary N. Stewart*
Gary N. Stewart, Esquire
(I.D. No. CT 15177)
25 N. Front Street, 1st Floor
Harrisburg, PA  17101
717-234-7700