The Law Offices of
## Sheffy & Mazzaccaro, L.L.P.
35 North Main Street
Southington, CT 06489
Phone: 860-620-9460
Fax:    860-620-9348
Real Estate Fax: 860-620-1978

A. Alan Sheffy
Joseph A. Mazzaccaro

Robert J. Dunne

Of Counsel
John H. Kiefel†

† Also admitted in Pennsylvania.

April 27, 2004

Tom Tucker
Reliance Standard Insurance Company
Group LTD Claims Department
2001 Market Street, Suite 1500
Philadelphia, PA 19103-7090

Re:   Claim No.:  1999-246-078
      Policy No:  LSC 98380

Dear Mr. Tucker:

We are in receipt of your letter dated April 4, 2004. Please be advised that the Federal District Court for the District of Connecticut, through the Honorable Stefan Underhill, has at this time jurisdiction over Mr. Orr's claim. Therefore, we believe that during the pendency of this action, Reliance is estopped from making further requests or inquiries of Mr. Orr under the terms of the policy. We believe that all inquiries must be directed through the District Court.

Further, and in direct response to your letter, any and all medical documents which are pertinent to this claim have been or will be supplied to the lawyer representing Reliance in connection with the above-captioned matter. We will continue to provide documents regarding Mr. Orr's medical status and work capacity through your attorney during the pendency of this lawsuit. Please direct your inquiries to your lawyer, Attorney Gary Stewart or Attorney Joshua Bachrach. Thank you for your time in this matter.

Very truly yours,

A. Alan Sheffy

## AFFIDAVIT OF KAREN MCGILL

I, Karen McGill, declare as follows:

1. I am a Senior Benefits Analyst in the Quality Review Unit of the Claims Department of Reliance Standard Life Insurance Company ("Reliance"), a defendant in this action. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2. I have reviewed the copy of the administrative record and attached banking records.

3. The attached banking records are a true and complete copy kept in the ordinary course of business by Reliance Standard Life Insurance.

4. I have reviewed the payment history for this claim.

5. I certify that a retroactive check in the amount of $139,352.84 was issued to Mr. Orr on February 23, 2004

6. I further certify that the aforementioned banking records document that this check was deposited on March 3, 2004. The same check posted to and cleared Reliance Standard's account on March 4, 2004.

7. I certify that due to an incorrect Social Security offset amount, Reliance has inadvertently overpaid the claimant by $100 on subsequent benefit checks issued March 16, 2004 and April 14, 2004.

8. I certify that Reliance acknowledges the incorrect calculation and will not attempt to recover these overpaid funds from the plaintiff.

9. I certify that the correct monthly benefit amount for this claim is $3,340.58.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28 day of April, 2004 at Philadelphia, Pennsylvania.

Karen McGill

# Elizabeth Orthopaedic Group

701 Newark Avenue
Elizabeth, N.J. 07208

(201) 355-7447

Donald J. Holtzman, M.D.                                    Andrew Carollo, M.D.

May 2, 2004

United Review Services
67 Walnut Avenue - Suite 405
Clark, New Jersey 07066

Attn: Patricia Wallace, LPN, IME Coordinator

        Re: **EDWARD ORR**
        File: 1999-246-018
        D/A: 10-25-1995

Dear Ms. Wallace:

Allow me to furnish you with an orthopedic peer review on Edward Orr. In preparation of this report, the following materials were reviewed:
Copies of medical records from the Hartford Hospital in Connecticut
Multiple copies of photos of the accident scene as well as photos of Edward Orr as a patient in the hospital.
A report of William Scott Hauptman, M.D., dated 1/10/01.
A report of Philip Pilon, D.M.D.
A report of Charles A. Fager, M.D., of 2/21/96.
Copies of records from the Gaylord Hospital in Connecticut pursuant to physical therapy reports.
A report of Hillary C. Onyiuke, M.D., a neurosurgeon from Hartford Hospital pertaining to the return to work status of Edward Orr.
A report of Arlen I. Liehter, M.D., dated 11/21/96.
A report of Sergio D. Francescon, dated 1/28/97.
A report of John L. Cannon, M.D.
Copies of records from the Brigham and Women's Hospital of Boston, Massachusetts inclusive of reports of Dr. Woodard, a neurosurgeon.

RE: EDWARD ORR          PAGE 2          MAY 2, 2004

A total disability assessment by Eric L. Woodard, M.D., dated 6/18/02.
Reports of Dr. Fredericks, a neurologist dated 11/25/95 as well as 1/3/96.

According to the records that I reviewed, Edward Orr was a 38-year-old male on 10/25/95, when he was an unrestrained passenger in a vehicle that was struck from behind by another vehicle and pushed across the median of the highway and struck again in a head-on type of situation. There was a history of him having struck his head on the windshield and having had loss of consciousness. The records from Hartford Hospital Trauma Room, where he was taken, report that he had no memory of the accident when seen. He had multiple facial abrasions present and was complaining of pain in his neck as well as in his upper back regions. He denied weakness or numbness in his upper and lower extremities. There were no motor or sensory deficits in his upper and lower extremities when examined. Radiological examination at that time revealed that he had a fracture of a facet on the right side at the C6 level with a subluxation of the C6-7 vertebral segment. He was put into an immobilization by means of a halo traction. He was admitted to the hospital where he remained until 11/2/95.

He was treated for his multiple injuries during his hospital stay. The halo was removed on 1/3/96. He had EMG nerve conduction studies on 4/12/96 at the Hartford Hospital, which reported the presence of C7 right-sided radiculopathy. An MRI of the cervical spine done on 4/13/96 at the Hartford Hospital was essentially negative for any displacement of bone or herniation of disc. There was normal alignment of the cervical spine.

Following his discharge from the hospital, he was followed up at the Gaylord Hospital for his rehabilitation, which was extensive. Multiple reports of physical therapy progress are included in the materials reviewed. He was sent back to his original job on 4/15/96 at the recommendation of Hillary C. Onyiuke, M.D, a neurosurgeon at Hartford Hospital. He was initially second back on a

RE: EDWARD ORR  PAGE 3  MAY 2, 2004

restricted basis working reduced time. He was finally sent back to work on a full-time basis in June of 1996.

During his period of treatment and his rehabilitation and thereafter, he was examined by multiple physicians from multiple specialties. On 11/25/95, he was seen by Dr. Fredericks, a neurologist, who noted that the patient was complaining of pain in the right index finger associated with some numbness and tingling as well as pain and mild weakness of the triceps muscle on the right side.

Following the halo removal on 1/3/96, Dr. Fredericks noted that the patient complained of pain in his right index finger associated with some numbness as well as adjacent numbness over the halves of the right thumb and long finger. He noticed slight weakness of the right triceps as well as forearm pronation. The strength of the extensors on the right foot was 4/5. He notes the symptoms that were due with regard to the right upper extremity secondary to C7 right-sided radiculopathy.

A letter of Philip Pilon, D.M.D., reports on the finding of slight chipping of four teeth. It was noted that the treatment consisted only of smoothing down and polishing the teeth at no charge to the patient.

The report of 2/21/96 of Charles A Fager, M.D., reflects that the patient was examined and no motor problems were encountered. There was no mention of any alteration in his speech pattern or thought processes. It was noted that there was some decreased sensation over the index, long and thumb of the right hand. There was also a complaint of mild sciatic complaints on the right side, which were thought were possibly be due to injections into the right buttocks while at Hartford Hospital.

On 11/21/96, the patient was seen by Arlen I. Liehter, M.D. The report of Dr. Liehter reflects upon a negative examination in the upper extremities except for what he terms a somewhat reduced range of motion of the cervical spine. There were no motor or sensory deficits encountered in the upper or the lower extremities. There was no

RE: EDWARD ORR          PAGE 4              MAY 2, 2004

mention of any alteration in his speech patterns or thought processes.

The patient was seen by Sergio D. Francescon, on 1/28/97. Dr. Francescon is a plastic surgeon who recommended revision of multiple small scars about the forehead.

In reviewing the examinations performed on the patient by multiple specialists, additional reports were reviewed by the following:
Mary Guerra, M.D., a treating primary physician for Mr. Orr.
A neurosurgeon, Dr. Young, who examined him on 7/13/99.
A pain management physician, Dr. Mark Lodico, who examined the patient on multiple occasions.
Dr. Whiting, a neurosurgeon, who saw the patient on 7/13/00.

The reports of the above physicians occurred primarily during the post-hospitalization and post-rehabilitation phase of this patient's case. During this time, he had complained of ongoing and progressive problems with his cervical spine and noted increasing amounts of discomfort with his right upper extremity and numbness and tingling in the right hand. He had also complained of significant fatigue and noted that he was unable to continue working because of his symptoms. It was noted by Mary Guerra, M.D., the treating physician, that the patient stated that he was unable to walk unassisted at the time she saw him on 3/30/00. During that same time frame, this patient was examined by other physicians, including Dr. Woodard, Dr. Whiting, Dr. Young and Dr. Lodico. In none of those reports was it mentioned that the patient was unable to walk about or care for himself. In reviewing all of the reports by the various specialists mentioned, there is no evidence in these reports that this patient has any alteration in his speech pattern or in his thought process. He has mentioned several times by various physicians as being able to sit through the examination in a cordial fashion without any acute distress.

RE: *EDWARD ORR*         PAGE 5         MAY 2, 2004

The MRI studies of his cervical spine and his lumbosacral spine post-injury indicate that the patient had no significant changes at either the cervical or the lumbosacral spines. Of note was the fact that during his hospitalization, it was not mentioned that he had fractures of the transverse processes on the left side at L1, L2, L3 and L4. Further notes in the material provided reflect that these fractures went on to heal without any difficulty.

In the 2/3/00 report of Mark Lodico, he reports that the individual in question, Edward Orr, was complaining of pain and burning in his lower extremities on the left side and pain in his lower back. His examination was unremarkable at that time reflecting on the absence of neurological deficits. There is also no mention of any changes in his speech or in his affect or thought processes at that time.

During his hospital stay and during the time he was in the halo apparatus for immobilization of his cervical spine, this individual experienced a panic disorder type of problem, which was treated appropriately by the psychiatry department. He responded quite well to Xanax. This type of reaction is fairly commonly seen in people who are immobilized in this type of apparatus. To the best of my knowledge, after review of all of the materials provided, he had no lasting effects of the panic disorder once the halo was removed.

DIAGNOSES:

Cerebral concussion
Fracture of the C6 vertebra with subluxation of C6-7
C7 radiculopathy on the right side
Lumbosacral ligamentous strain
Chipping of four teeth
Multiple facial abrasions
Multiple contusions

In my opinion, the injuries mentioned in the diagnoses above are directly attributable to his accident of 10/25/95.

RE: EDWARD ORR           PAGE 6           MAY 2, 2004

After reviewing the materials provided, which were voluminous and quite extensive, it is my opinion that this individual should be able to return to his work on a full time basis. His job is primarily white collar in nature and sedentary. Based on all the materials provided, I see no reason why a man in his current situation should not be able to work on an unrestricted basis given his complaints.

In reviewing all of the materials, this patient had a significant accident, which was undoubtedly high speed in nature after having reviewed the photographs of the accident and the automobile, which was destroyed. He sustained significant injuries to the cervical spine and multiple contusions and sprains. He had an extensive hospitalization and was treated appropriately and made a very gratifying response to his treatment. His primary reasons for not returning to work are subjective in nature and primarily the complaints of discomfort, fatigue and problems concentrating or communicating. After reviewing all of the medical examinations that were performed on him and all of his medical records, I see no objective evidence at this time that he has any permanent neurological sequelae or psychological sequelae that would make it difficult to perform his tasks at work. As stated, this opinion was reached only after review of all of his medical records, but without having the benefit of performing a physical examination.

I trust the above information will be of some value to you. Thank you very much.

Very truly yours,

Andrew Carollo, M.D.
Diplomate of the American Board of Orthopaedic Surgery
AC:oc

# Elizabeth Orthopaedic Group

701 Newark Avenue

Elizabeth, N.J. 07208

(201) 355-7447

Donald J. Holzman, M.D.

Andrew Carollo, M.D.

May 2, 2004

United Review Services
67 Walnut Avenue - Suite 405
Clark, New Jersey 07066

Attn: Patricia Wallace, LPN, IME Coordinator

Re: **EDWARD ORR**
File: 1999-246-018
D/A: 10-25-1995

Dear Ms. Wallace:

Allow me to furnish you with this addendum to the report of 5-2-04.

After carefully reviewing all of medical information supplied I can find no evidence to support a diagnosis of dysesthetic or dysreflexic syndrome. In my opinion his complaints are secondary to chronic pain and inflammation that one sees following the injuries he sustained.

I believe there is a reasonable basis to have him interviewed or reevaluated to determine his level of restrictions, if any.

I do not find a reasonable basis for Mr. Orr's attorney to object to have him reviewed or re-examined.

Very truly yours,

Andrew Carollo, M.D.

05/06/2004  08:32  2672563537                  RELIANCE STANDARD                PAGE  09/09
UNITED REVIEW SERVICE  Fax:1-262-970-9563       May  5 2004   9:08       P.05
May 6 2004  8:34
Case 3:02-cv-01457-SRU   Document 42-2   Filed 05/14/2004   Page 10 of 11

May 05 04 10:27a     ELIZABETH ORTHO*GROUP*      908-355-9202               p.3

CURRICULUM VITAE
OF
ANDREW CAROLLO, M.D.

| | |
|---|---|
| HIGH SCHOOL: | MONESSEN HIGH SCHOOL, PA - 1960 |
| COLLEGE EDUCATION: | RUTGERS UNIVERSITY, B.A. - 1964 |
| MEDICAL EDUCATION: | NATIONAL AUTONOMOUS UNIVERSITY OF MEXICO SCHOOL OF MEDICINE, M.D. - 1971 |
| INTERNSHIP: | ST. BARNABAS MEDICAL CENTER LIVINGSTON, NEW JERSEY - 1972 |
| RESIDENCY: | NEW JERSEY COLLEGE OF MEDICINE AND DENTISTRY 1973-1977, ORTHOPAEDIC SURGERY |
| HOSPITAL AFFILIATIONS: | ELIZABETH GENERAL HOSPITAL, ELIZABETH, N.J. SAINT ELIZABETH HOSPITAL, ELIZABETH, N.J. UNION HOSPITAL, UNION, NEW JERSEY |
| TEACHING AFFILIATIONS: | <u>ASSISTANT CLINICAL PROFESSOR</u>, DEPARTMENT OF SURGERY, DIVISION OF ORTHOPAEDIC SURGERY JERSEY COLLEGE OF MEDICINE, NEWARK, N.J. <u>ASSISTANT CLINICAL PROFESSOR</u> - ORTHOPAEDIC SURGERY, SETON HALL UNIVERSITY |
| BOARD CERTIFICATION: | AMERICAN BOARD OF ORTHOPAEDIC SURGERY -1978 |
| PROFESSIONAL ASSOCIATIONS: | MEMBER, STATE BOARD OF PHYSICAL THERAPY - 1985 TO 1986<br><br>MEMBER, EXECUTIVE COMMITTEE OF THE NEW JERSEY ORTHOPAEDIC SOCIETY, 1982 - 1987<br><br>MEMBER, AMERICAN COLLEGE OF SPORTS MEDICINE<br><br>FELLOW, AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS 1979 TO PRESENT<br><br>MEMBER, AMERICAN MEDICAL ASSOCIATION<br><br>MEMBER, UNION COUNTY MEDICAL ASSOCIATION |

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD W. ORR | : CIVIL ACTION |
| | : |
| | : No.: 302 CV 1457 (SRU) |
| v. | : |
| | : |
| RELIANCE STANDARD LIFE | : |
| INSURANCE COMPANY | : |

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of the foregoing Response for Plaintiffs Motion for Injunctive Relief was served on all counsel of record via First Class U.S. Mail, postage prepaid, addressed as follows:

> A. Alan Sheffy, Esquire
> Sheffy & Mazzaccaro LLP
> 35 North Main Street
> Southington, CT 06489

*Gary N. Stewart*
Gary N. Stewart, Esquire

Dated: 5/13/2004

982461 v.1