IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

FILED

2004 MAY 28 A 8:37

U.S. DISTRICT COURT
BRIDGEPORT CONN

| | |
|---|---|
| EDWARD W. ORR<br>    Plaintiff<br>vs.<br><br>RELIANCE STANDARD<br>LIFE INSURANCE COMPANY<br>    Defendant | : Civil Action<br>: No. 302 CV 1457 (SRU)<br>:<br>:<br>: May 24, 2004<br>: |

### PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

I.    PRELIMINARY REMARKS

Edward Orr now replies to the Response of the Defendant. The Defendant's brief seems to alternately argue that Orr is **not** legally disabled,[1] that the undersigned is teetering on the line of reproachable conduct in aggressively trying to protect Mr. Orr,[2]

---

[1] Exhibit "B" of Defendant's Memorandum of Law in opposition to Plaintiff's Motion for Permanent Injunctive Relief, Dated May 13, 2004 (hereinafter referred to as "Defendant's Memorandum"): Page 6 of Dr. Carollo's medical report states, "I see no reason why a man in his current situation should not be able to work on an unrestricted basis given his complaints." [Dr. Carollo's report is referenced at numerous junctures in the Defendant's two-part submission, including on Page 1 of the two-page document entitled "Defendant's    Response to Plaintiff's Motion for Injunctive Relief."]

[2] Defendant's Memorandum Pages 10-11:    Pages 10-11 of the Defendant's Memorandum of Law state, "...[C]ounsel for plaintiff **pushed the boundaries of acceptable behavior** when he wrote directly to Reliance....This behavior is entirely unacceptable and may warrant further attention." [Emphasis supplied.]

Page 10 states, "Throughout his brief counsel for plaintiff misstates the holdings in cases and cites cases that are no longer valid case law." [Reliance's case-law errors are shown in Appendix A to this Reply.)

Page 10 states, "Counsel...also argued without any explanation that the benefit amount was incorrect....he [the Plaintiff] was overpaid by one hundred dollars..." [Actually the error was $1,566.88, and the bulk of this error is readily apparent from a simple examination of the Court-ratified agreement. For Reliance's benefit, however, very detailed calculations are shown in Appendix B to this Reply.]

1

that the Court has <u>no</u> jurisdiction to hear this matter,[3] that Dr. Eric Woodard of Harvard may <u>never</u> have examined Mr. Orr and may <u>never</u> have referenced numerous diagnoses,[4] that the opinions of five of Mr. Orr's physicians documenting risk of bodily harm should be summarily <u>discarded</u>,[5] and – finally – that there is a <u>difference</u> between a "diagnosis" and a "condition."[6]

In support of its argument, Reliance offers medical evidence in the way of a file review by an alleged <u>orthopedist</u>,[7] and legal evidence in the way of two <u>inapposite</u> cases.[8]

Without exaggeration, Orr's life is at stake. At his client's request, the undersigned has submitted two 40-page briefs.[9] The undersigned, at his client's request, has submitted 4,200 pages of documents.[10] The undersigned did not use outdated and/or overruled law.[11] The undersigned did not improperly quote from a District Court opinion in <u>Kinstler</u>.[12] Suffice it to say, Reliance's depiction of both the

---

[3] Defendant's Memorandum Page 2
[4] Defendant's Response to Plaintiff's Motion Page 1
[5] Defendant's Response to Plaintiff's Motion Page 1
[6] Defendant's Response to Plaintiff's Motion Page 1
[7] Defendant's Response to Plaintiff's Motion Exhibit "B"
[8] Defendant's Memorandum Page 2 states, "...[D]efendant only needs to cite to two cases to defeat the motion."
[9] So that the record if clear, the referenced briefs consist of the Plaintiff's Motion and Memorandum, respectively numbering twenty-five and forty pages in length.
[10] Exhibit T
[11] Appendix A to this Reply elucidates Reliance's case-law errors in regard to citations from <u>Darland v. Fortis Benefits</u>, 317 F.3d 516 (6th Cir. 2003).

[12] Appendix A to this Reply also elucidates Reliance's case-law errors in regard to citations from <u>Kinstler</u>, with excerpts from four separate <u>Kinstler</u> opinions shown therein. Incidentally, as shown below, only <u>one</u> particular District Court Opinion — from one particular date — was mentioned (in the Appellate Court Opinion) as having been affirmed:

> First Reliance... appeals **from the September 30, 1997, judgment** of the United States District Court... (<u>Kinstler</u>, 181 F.3d 243, 245 (2nd Cir. 1999) (Emphasis supplied))

Accordingly, Orr's brief quoted directly from the District Court Opinion dated "September 30, 1997," to which Reliance's Counsel has responded in a most irrational fashion.

undersigned and his client as presenting frivolous argument is unfortunate and a far cry from the response to be expected from a fiduciary concerned about the safety and welfare of its beneficiaries. [13]

The remainder of this Reply focuses on rebutting the <u>Peterson</u> case and the <u>Jones</u> case, the only two legs upon which Reliance's legal argument seems to stand.

II    <u>LEGAL ARGUMENT</u>

If the Defendant purportedly needs only two cases to "defuse" the Plaintiff's argument, then perhaps the Plaintiff need avail itself of only two cases[14] in rebuttal

---

[13] Reliance's repeated efforts to harm Mr. Orr have come to the attention <u>of the medical profession as a whole</u>, and a one-page letter from Dr. Adam Perrin, addressed to this Court, is hereby attached to the Plaintiff's reply as Exhibit S. Dr. Perrin references experts at both Harvard and Yale University, and also references a special medical file / epidemiology index. Mr. Orr's case has been the object of extensive study, and, in fact, the very index referenced by Dr. Perrin easily demonstrates that Dr. Carollo's report is so deficient as to be nothing less than a joke. Literally hundreds of specific references are identified, per page number, and therefore this index has been supplied to Mr. Tom Tucker (of Reliance), along with voluminous page-numbered medical records (thousands of pages of which he already has a prior copy of in his unnumbered file). In the thousands of pages that Dr. Carollo did "examine," though, there are literally hundreds of references to life-threatening conditions – and, for some strange reason – Dr. Carollo missed them all.

As described in Dr. Perrin's letter to the Court, it is by no means necessary for the Court to examine records of the type submitted to Mr. Tucker above; nevertheless, if at any time Reliance chooses to place Mr. Orr's life in further jeopardy by continuing to question the fragility of Mr. Orr, and/or the existence of Mr. Orr's dysesthesia/dysreflexia, then the Plaintiff respectfully requests that the comprehensive mailing sent to Mr. Tucker be entered into evidence, along with any other claim file materials, from any and all sources, especially sources internal to Reliance.

In addition, it is notable that documentation from Dr. David Katz, an internationally renowned epidemiologist and expert in the area of testing and examination risks (he even teaches a special course in medicolegal tort law at Yale) has already been submitted on behalf of Mr. Orr (Exhibit N). **<u>DR. KATZ CONSIDERS MR. ORR'S CASE OF NATIONAL SIGNIFICANCE, AND HAS INDICATED HIS WILLINGNESS TO TESTIFY ON BEHALF OF MR. ORR.</u>**

[14] And the cases therewith associated.

3

thereof. First, we shall begin with a direct quote from Page 3 of the Defendant's Responsive Memorandum of Law:

> Neither the Second Circuit nor any other court has ever held that the exhaustion requirement only applies when the Court's review is deferential.

In juxtaposition to the above, the following excerpt from Davenport v. Abrams, 249 F.3d 130, 133 (2nd Cir. 2001) is quite instructive:

> The primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) <u>assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*</u>.

Is the judicial standard of review in Orr's case "arbitrary and capricious"? No. In fact, on March 15, 2004, two months ago, the District Court of Connecticut issued an opinion involving an ERISA case in which one of Mr. Orr's former work colleagues filed suit against BYK-Chemie (Mr. Orr's former employer). Linder v. BYK-Chemie, 2004 WL 797639 at 2 (D. Conn. 2004). The crux of the suit involved the exhaustion of remedies. The Court availed itself of the full logical precedent set forth by Davenport (which is in full compliance with Supreme Court decisions[15] already discussed in the Plaintiff's briefs), as shown in the excerpt below:

---

[15] Ranging from Knudson to Varity.

4

At issue is whether Linder properly exhausted his administrative remedies prior to filing this suit....[A]lthough ERISA itself does not include an exhaustion requirement, there is a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." <u>Kennedy v. Empire Blue Cross and Blue Shield</u>, 989 F.2d 588, 594 (2d Cir. 1993) (quoting <u>Alfarone v. Bernie Wolff Construction</u>, 788 F.2d 76, 79 (2d Cir. 1986)). The exhaustion requirement serves important purposes, including to "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) <u>assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*</u>."FN3

FN3 — A denial of benefits is normally reviewed under an abuse of discretion standard if the...plan gives the administrator the "authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire and Rubber v. Bruch</u>, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)...

<u>Linder v. BYK-Chemie</u>, 2004 WL 797639 at 2 (D. Conn. 2004)

<u>Davenport</u> is the first case that defuses the Defendant's argument, and <u>State of Connecticut v. Physicians Health Services of Connecticut, Inc.</u>,[16] is the second. As the latter's overt mention of an ERISA "safety net" (for equitable relief caused by violations of ERISA) has <u>already</u> been described in the Plaintiff's prior briefs, only the logic therein – along with supporting cases – will be discussed from here on.

First of all, a brief recap of the pertinent facts:

1.   Orr's policy is *de novo*.

---

[16] 287 F.3d 110 (2nd Cir. 2002)

5

2. <u>If</u> this Court so chooses, it has the authority to exercise continued jurisdiction, especially in light of an ERISA violation not adequately remedied elsewhere.

3. Section 1132 (a) (3) acts as a safety net, offering appropriate <u>equitable relief for injuries caused by violations of ERISA that §1132 does not elsewhere adequately remedy</u>.

4. Benefits were unfairly delayed for nearly four years, and as already described in the Plaintiff's briefs, such delay clearly indicates an unequivocal Breach of Fiduciary Duty under Second Circuit precedent:

   …[P]ayment of those benefits was delayed nearly five years….Unless such a delay is justified, **we see no reason why it does not constitute a breach of fiduciary duty.**

   <u>Dunnigan v. Metropolitan Life Insurance Company</u>, 277 F.3d 223, 230 (2nd Cir. 2002) (Emphasis supplied)

5. Reliance delayed benefits by nearly four years.

6. Reliance has breached its fiduciary duty.

And now the conclusion:

7. The Plaintiff's condition is <u>extremely</u> fragile, and has been deemed so by numerous physicians.

8. In <u>Zervos v. Verizon</u>, 277 F.3d 635, 648 (2nd Cir., January 28, 2002), the Court made it clear that in situations where the Plaintiff's condition is fragile, and/or when time is of essence, that numerous special measures are

6

appropriate, <u>including close scrutiny of the appellate process employed by the insurer</u>.

9. As already described in the Plaintiff's briefs, the appellate process employed by the insurer is deficient.

10. This Court has the authority to grant equitable relief designed to eliminate these deficiencies.

11. Unique and exigent circumstances exist to the extent that Mr. Orr may not live through either an internal appeal (within Reliance) or even an external appeal (outside of Reliance). In other words, as the First Circuit has expressed it:

> Some might think it perverse to dwell on [money] damage remedies, which apply where the patient has died or already suffered injury, <u>and might urge instead that courts improve access to equitable relief. This remedy, already available under ERISA, can address a wrongful denial of benefits while the patient is still alive and unharmed</u> [this case obviously involved medical benefits].
>
> <u>Although Ronald Turner says that such judicial relief is readily frustrated by exhaustion of remedies rules, a failure to exhaust is easily forgiven for good reason</u>...
>
> Turner v. Fallon Community Health Plan, 127 F.3d 196, 200 (1st Cir. 1997) (Underlining and emphasis provided)

12. Orr is still alive now, and the undersigned would like to keep it that way, and there's absolutely <u>no</u> reason why any insurance company – or why any party whatsoever – should be allowed to jeopardize Orr's life now, or at any time in the future.

13. Time is of essence, and this is yet another reason for the Court to act.

7

14. <u>Reliance has already forced both the undersigned and this Court to jeopardize Orr's life by forcing him to be involved in a prolonged legal battle that would naturally take its toll on any normal individual – only Orr is NOT a normal individual</u>.

15. As far back as the year 2001, three independent physicians stepped forward, and <u>attempted</u> to protect Orr (Exhibit G) from being harmed by having to move, to talk, and/or otherwise to be involved in legal matters. But did this convince Reliance to settle the case in the year 2001? No, it did not.

16. <u>If</u> Reliance had truly been interested in fulfilling its fiduciary duty to Orr, it would have paid up in 2001, only a few months after having discontinued Orr's benefits. The fact of the matter is, Reliance does not care whether Orr lives or dies, and it proved this by not paying until the year 2004, and then it had the audacity to complain when <u>the undersigned</u> complained that Reliance's check was late and in nonconformance with the Court-ratified agreement.

17. The undersigned respectfully submits that this Court has the power and authority to make sure nothing like this <u>ever</u> happens again.

18. Three doctors stepped forward in the year 2001, and <u>five</u> doctors stepped forward just a few months ago, in the year 2004.

WHEREFORE, Mr. Orr moves the Court to enter an Order of Injunction as requested in his brief on March 23, 2004.

SHEFFY & MAZZACCARO, LLP

Date:                          BY: _____
A. ALAN SHEFFY
35 North Main Street
Southington, CT 06489
Telephone: (860) 620-9460
ID# CT04366
Attorneys for:
Plaintiff, Edward W. Orr

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing upon counsel of record this date by United States Postal Service first class mail, postage pre-paid, addressed as follows:

> Gary N. Stewart
> Rawle & Henderson
> 25 North Front Street
> Harrisburg, PA  17101

Date:

_____
A. ALAN SHEFFY