The Law Offices of
# Sheffy & Mazzaccaro, L.L.P.
35 North Main Street
Southington, CT 06489
Phone: 860-620-9460
Fax:    860-620-9348

A. Alan Sheffy
Joseph A. Mazzaccaro

John H. Kiefel†
Of Counsel

Robert J. Dunne

Also admitted in Pennsylvania†

December 12, 2003

Honorable Stefan Underhill
United States District Court
Brien McMahon Federal Building
915 Lafayette Boulevard
Bridgeport, CT 06604

    Re:    <u>Edward W. Orr v. Reliance Standard Life Insurance Company
No. 302 CV 1457</u>

Dear Judge Underhill:

In response to the Defendant's letter to the Court,[1] the Plaintiff notes numerous fallacies and inconsistencies, along with inapposite usage of the case law. In addition, certain points in the Defendant's oral argument,[2] especially regarding Reliance's request for remand, are based on inappropriate assumptions, and must be corrected. Accordingly, the objective of this letter is the clarification of the following issues:

    I.    Why is a remand inappropriate in this particular case?

    II.    Within the context of characterizing Reliance's actions, is there a material difference between its acting as a "fiduciary to whom the employer delegated decision making authority" (page 1 of Mr. Stewart's letter) and its being "responsible for making eligibility decisions as well as paying benefits" (Ibid)?

---

[1] Mr. Stewart's letter of December 4, 2003.

[2] Of December 3, 2003.

1

    III.     Is Reliance operating under a conflict of interest?[3]

    IV.    Mandatory injunctive relief (future benefits)

    V.     How long is "permanent"?

    VI.    Settlement proceedings

With the intent of keeping this letter as brief as possible, the following analysis is therefore abbreviated, and is arranged in basic outline form.

I.    <u>Why is a remand inappropriate in this particular case</u>?

In *Zervos v. Verizon*, Nos. 01-9213 (L), 01-9234 (XAP), (2d Cir., January 28, 2002),[4] the Court made it clear that in situations where the Plaintiff's condition is fragile, and/or when time is of essence, a remand would run contrary to the aims of justice:

> Any delay necessitated by a remand could effectively deny justice in this case.... Therefore, remand was an inappropriate remedy, and the District Court should have reversed the determination to deny benefits and directed Empire to provide the requested coverage. [p. 10]

There are also additional reasons for not remanding certain cases. For instance, in *Levinson v. Reliance Standard [the same Defendant as in Orr's case]*, No. 00-11187 (11th Cir. 2001), the Court clarified matters as follows:

> **Reliance argued that the district court should either remand Levinson's claim to Reliance for an initial calculation of damages, or should limit the evidence of damages to evidence contained in the administrative record. The <u>district court did neither</u>**, and determined Reliance had not shown that Levinson's condition had improved, and awarded benefits through the date of trial [please note that there was no showing of permanency in regard to Levinson's particular disability[5]]. [p.3, emphasis supplied]

---

[3] And what impact does "conflict" (however it may be defined) have on the handling of this particular case?

[4] Please note that there were two separate appeals in *Zervos*, hence the inclusion of the full clarifying date above.

[5] Also, it is important to mention that, in this particular case, Levinson did <u>not</u> even overtly request the admission of additional evidence, at least not on the basis of "conflict of interest." This is indeed notable, as even though Levinson's "record" was, for the most part, complete, the Court still openly allowed the admission of evidence obtained <u>five years after Reliance had closed the file (1996-2001)</u>. Furthermore, all of this occurred under a non-de novo standard of review! This latter point is mentioned because obviously under a de novo review (allowable in

2

It is notable that the *Levinson* Appellate Court upheld the District Court's decision in no uncertain words:

> The district court correctly found Reliance's claim decisions were arbitrary and capricious, and <u>correctly refused to remand</u> to Reliance for decisions on Levinson's eligibility or the amount of benefits to which he was entitled. For the foregoing reasons, we affirm the decision of the district court. [p.7, emphasis supplied]

It is also notable that the *Kinstler* Court (among others) did not remand.[6]

II.     <u>Within the context of characterizing Reliance's actions as an insurer, is there a material difference between its acting as a "fiduciary to whom the employer delegated decision making authority" (page 1 of Mr. Stewart's letter) and its being "responsible for making eligibility decisions as well as paying benefits" (Ibid)?</u>

Both common sense and case law provide easy answers to this question. First of all, if one is wearing two hats (both making decisions and paying from one's own pocket), then it really doesn't matter what one calls himself. One is conflicted.

In regard to germane case law, *Zuckerbrod v. Phoenix Mutual Life Ins. Co.*, No. 95-7444 (2d. Cir. 1996) completely dispenses with "the semantic swamps" (*Kinstler*) of terminology like "fiduciary" versus "administrator, etc., and simply refers to the insurer as the "insurer":

> ...[A] court weigh must as a relevant factor whether an **insurer** operates under an inherent conflict of interest, by both administering a plan and paying benefits out of its own funds [p. 3, emphasis supplied].[7]

---

Orr's case), the Court has <u>even more discretion</u> to consider evidence, to interpret the records, to make judgments, and to act as the substitute plan administrator.

[6] The *Kinstler* Court (among others) also considered evidence not in the administrative record in its final decision, so whether or not the record is complete is therefore a moot issue in regard to whether the Court is empowered to make a decision. This is mentioned expressly to counter any anticipated usage of inapposite case law (by the Defendant), who might at some point in time wish to again argue that since the record is incomplete, Reliance should have "another bite at the apple." In addition, <u>the extenuating circumstances</u> created by (1) the insurer's demonstrated conflict of interest, and (2) the insurer's bad faith [please see Plaintiff's previously submitted briefs], are more than sufficient grounds for empowering the Court to make a decision.

[7] Please note that although some aspects of *Zuckerbrod* are apposite, some are not. For instance, the standard of review therein was "arbitrary and capricious," which obviously granted the insurer more "privileges" and discretion than it enjoys in the *Orr* case. (In addition, please note that *Zuckerbrod* <u>predates</u> both *DeFelice* and *Kinstler*).

3

In conclusion, the Courts are endowed with the ability "to pierce the corporate (and/or semantic) veil" whenever the terminology employed is obviously formulated with the intent to elude justice.

### III. Is Reliance operating under a conflict of interest?

The Defendant's usage of *Krizek* is inapposite, as *Krizek's* own citations of case law regarding conflict were often incorrect, with perhaps one reason for the Court's inattentiveness having been the fact that **"the issue of conflict was never raised before the District Court,"**[8] and the concomitant fact that the Appellate Court's discussion of conflict was rather peripheral in nature.

For instance, one citation erroneously refers to an appellate case decided in 2001[9] (*Connors v. Conn. Gen. Life Ins. Co.*, 272 F3d 127, 134-35 (2d Cir. 2001)) as supporting *Krizek's* contention that the Court's review is limited to the administrative record, unless good cause (representing more than structural conflict) justifies expansion (*Krizek*, p. 9-10). In other words, the *Krizek* Court purported to agree with the *Connors* Court!

The only problem is that the *Connors* District Court decision ([98 Civ. 8522 (S.D.N.Y. December 16, 1999)], which was entirely affirmed by the *Connors* Appellate Court in regard to how it handled the conflict issue) actually indicated, as shown below, **that structural conflict was entirely sufficient for expanding the record!**

> Finally, a question has been raised as to whether the Court's *de novo* review will be limited to the record reviewed by CGLIC. The plaintiff claims that CGLIC is a conflicted administrator and, therefore, additional evidence should be permitted. See *DeFelice v. American Int'l Life Assurance Co. of New York*, 112 F.3d 61, 66 (2d Cir. 1997). However, *DeFelice* is distinguishable **because here the employer [rather than the insurer] ultimately pays all amounts due under the plan.** [p. 8, emphasis supplied]

---

[8] *Krizek v. Cigna Group Insurance*, No. 02-9321 (2d Cir. 2003), p. 8.

[9] This is important to mention because this particular case agrees with *DeFelice* and postdates it. Oddly enough, *Krizek* purports to agree with both *Connors* and *DeFelice*, yet it erroneously states the content of both cases, and then rapidly moves on to discuss other issues – in other words, it moves on to issues which are not peripheral to the particulars of the *Krizek* case.

4

Consequently, the Defendant's usage of *Krizek* is inapposite, as *Krizek's* own citations of case law were indeed incorrect on the "peripheral" issue of conflict.[10]

Interestingly enough, though, even if one were to completely discard the argument that "*Krizek* is inapposite," then one would *still* unequivocally find that additional evidence should be allowed. Why? Because both ERISA statutes and case law indicate that the following actions are more than sufficient grounds for ruling "a <u>demonstrated</u> conflict of interest":

1. Wrong DOT

2. Missing records

3. Selective reading of the record

4. Termination unsupported by the medical evidence (nothing changed)

5. ERISA infractions in regard to both fees and deadlines (please see briefs)

6. Failure to exhibit proper judgment, in having merely a "records review"

7. And, adding insult to injury, utilizing a gastroenterologist for said review

As evidence of the aforementioned actions serving as more than sufficient proof of demonstrated conflict, the following two excerpts from *Parke v. (First) Reliance Standard [the same Defendant as in Orr's case]*, CN-99-1039, (JRT/FLN), (Dist. MN, September 25, 2002) are provided:

> Although the Eighth Circuit has stated that such a dual relationship does not create a conflict *per se*..., defendant has not presented a persuasive argument that ameliorates the structural conflict. *Farley v Arkansas Blue Cross and Blue Shield*, 147 F.3d. 774 (8th Cir. 1998). Plaintiff has also shown a connection between the conflict and the substantive decision reached. In denying plaintiff's initial claim for benefits, **defendant selected a DOT [compare to *Orr v. Reliance*] which classified plaintiff's job as sedentary despite clear evidence in the record that plaintiff's position was not sedentary**. In addition, the Court is troubled by the fact that defendant only had a nurse review plaintiff's claim....These actions demonstrate that defendant did not thoroughly investigate the claim and failed to use proper judgment. *Woo*, 144 F.3d at 1161 **(citing Restatement (Second) of Trusts § 187 cmt. h. (1959))**. [p 16, emphasis supplied]

> [Also]...*Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan*, 874 F.2d 496, 500 (8th Cir. 1989) (termination of benefits not supported by substantial

---
[10] Peripheral, that is, to the particulars of the *Krizek* case.

5

evidence where evidence in medical report which led the Plan to find plaintiff disabled was **the same as a later report which the Plan now claimed supported a finding that plaintiff was no longer disabled**). [p.19, emphasis supplied][11]

Accordingly, Reliance's role in both *Parke v. (First) Reliance* and in *Orr v. Reliance* is unequivocally that of a conflicted insurer. The Court is also requested to take notice of the fact that the Defendant's counsel was/is the same in both *Parke* and *Orr*.[12]

## IV.    Mandatory Injunctive Relief (future benefits)

Not only does the *Kinstler* Appellate Court fully support the granting of future benefits,[13] but other Courts concur. For instance, in *Hall v. Unum*, No. 01-1237 (10th Cir. 2002), **"the court held that UNUM owed Hall past-due benefit payments and that Hall was entitled to**

---

[11] Please note than more than a dozen additional cases are available to illustrate the two points above; however, for purposes of brevity, only one case (*Parke*) is presented here.

In addition, under both trust law (please see *Parke* excerpt above) and ERISA statutes (including *Subchapter G – Administration and Enforcement Under the Employment Retirement Income Security Act of 1974, § 2560.503-1, Part 2560, Rules and Regulations for Administration and Enforcement*), there exists more than ample support for ruling Reliance's actions as indicative of conflict, as shown in the following excerpt from the statutes:

> A claims procedure will be deemed reasonable only if it…(iii) Does not contain any provision, and is not administered in a way which unduly hampers the initiation or processing of plan claims... (CRF 1977, p. 492; also CFR 1978, p 595).

[12] Mr. Joshua Bachrach, who functions as Central Counsel for Reliance, represented Reliance in *Parke*, and is currently collaborating with Mr. Gary Stewart. This is mentioned, first of all, because the claim file in Orr's case was transmitted to the Plaintiff by Mr. Bachrach. It is also mentioned because multiple Courts have commented on certain recurrent aberrations in Reliance's handling of claim files. Many of these very same aberrations have occurred in regard to Orr's file. For instance, in *Sunderlin v. (First) Reliance Standard* No. 00-CV-6253 (W.D.N.Y., November 4, 2002), in which not only part of the policy was missing, but in which also the claim file was grossly incomplete and/or nonexistent, as in Orr's case, the Court made the following observations:

A.    "On December 15, 1999, First Reliance sent plaintiff an incomplete copy of the disability policy..." [p.5, emphasis supplied]

B.    "During oral argument before this Court on October 11, 2002, counsel for First Reliance admitted that he did not know whether or not First Reliance had created a claim file. As to that, the Court notes, with strong disapproval, the misstatement contained in First Reliance's Rule 56 Statement of Facts, that a new claim file had been created." [p. 11-12]

[13] Please note that there were actually three opinions/judgments (counting amended judgments) entered by the *Kinstler* District Court. This is critical because the District Court's final judgment, dated September 30, 1997, granted future benefits, and is seldom – if ever – referenced in computer databases, even though it is overtly referenced on the first page of the Appellate Court's decision ("Before WINTER, Chief Judge, NEWMAN, and SOTOMAYER, Circuit Judges. Appeal from the September 30, 1997, judgment.... Affirmed").

6

mandatory injunctive relief for future benefits 'so long as her disability continues.'" [p. 2, emphasis supplied], all of which brings us to the next question...

V.    How long is "permanent"?

Multiple physicians have proclaimed Orr totally and permanently disabled, including a neurosurgeon from Harvard University. Mr. Orr is entitled to benefits until age sixty-five (65), unless he dies beforehand, at which time his benefits cease upon date of death. Accordingly, Orr requests the protection of the Court in enforcing his rights. In *Hall v. Unum*, the Plaintiff died during the appeal, which was highly unfortunate. The appeal was successful (ruling for the Plaintiff), but so what? This is mentioned because there's a time and place for swift justice, and cases like (1) *Hall* and (2) *Orr* (not to mention (3) *Kinstler* and (4) *Zervos*) are indeed prime examples of cases where swift justice is called for.

VI.    Settlement proceedings

The Court instructed the parties to advise by December 12, 2003, whether the case could be settled and whether they, respectively, would agree to participate in a settlement conference with a Magistrate Judge. Accordingly, this is to confirm that the Plaintiff would like to participate in a conference, keeping in mind Mr. Orr's state of health and the concomitant need for resolution of this case before the end of the year.

The aforementioned issue of timing is mentioned for the following reasons:

1. The Court has overtly communicated to both parties that it wishes a speedy resolution of the case.

2. The Plaintiff has reason to believe that perhaps Reliance's entry into negotiation proceedings may not be predicated on good faith intentions for speedy resolution, as Reliance's counsel has expressed that an appeal might be necessitated based upon the denial of its Motion for Summary Judgment under a traditional rule 56 analysis.

3. In light of Reliance's belief that it may have an appealable issue,[14] the Plaintiff is still willing to participate in a settlement conference with a Magistrate Judge, but

---

[14] Reliance has communicated its disagreement with the present Court's understanding of (1) the "decision criteria and standards appropriate (including burden of proof) for ERISA cases," and (2) the present Court's handling of "Rule 56" matters.

7

respectfully requests that the District Court of Connecticut speak with the Defendant about its intent to appeal, as the Plaintiff's health condition is fragile, and therefore any attempt by the Defendant to unnecessarily prolong proceedings is not fair to the Plaintiff.

4. As evidence of the unnecessary burden placed upon the Plaintiff by Court proceedings, three independent physicians have completed Form 127T *(Statement of Undue Burden and Limited Ability to Participate in Insurance Company Documentary and Oral Proceedings)*, on behalf of Mr. Orr.

5. Copies of the aforementioned Form 127T are hereby attached.

6. Once again, "[a]ny delay necessitated by a remand [or necessitated by any other cause, such as wasted time at the negotiation table, especially when one party is already at work on its appeal] could effectively deny justice in this case..." (*Zervos*, p. 10)

7. By way of apposite analogy (to *Zervos* above), any delay brought about by Reliance's actions could effectively deny justice to Mr. Orr.

Furthermore, based on the above information, the Plaintiff has good reason to believe that Reliance Standard's appeal strategy may consist of a restatement of many of the same appeal arguments made by Reliance, on pages 25-31 in its "Brief of Appellant" as submitted in *McGee v. Reliance Standard*, No. 03-2372 (an as-yet-undecided appeal in the Eighth Circuit); all appellate-level briefs are available, of course, on the Eighth Circuit's website, at www.ca8.uscourts.gov). Reliance's arguments in *McGee* (and in numerous other appellate cases, too, for that matter) include – verbatim – the following:

A. "The District Court improperly shifted the burden of proof onto Reliance Standard" (p. 25-26)

B. "The District Court gave undue deference to the treating physicians" (p. 26-31)

C. "The District Court improperly considered evidence from outside of the administrative record" (p. 31)

Please note that Reliance also submitted a "**Reply Brief of Appellant**" (consisting of seventeen additional pages) in *McGee*, and that said brief further accentuates Points "A" – "C" above.

At this juncture, the Plaintiff would also like to take the opportunity to bring up a hitherto-unaddressed "Rule 56 issue" that seems to have completely escaped the attention of the Defendant. Please note that this particular issue is completely unrelated to any Rule 56 matters connected with the Defendant's plans for an appeal.

Namely, the Defendant has neglected to adhere to the Court's procedure in the filing of its briefs, motions and responses. For instance, **the Defendant has at no time provided the Court with either (1) a valid Rule 56 Statement, or more particularly, with (2) specific citations responding to each of the thirty-nine paragraphs in the Plaintiff's Amended Cross-Motion for Summary Judgment.**

This is a serious matter. According to the Court's rules, when an opponent fails to comply, an order can be entered for the movant (Plaintiff) granting the motion. The Court has always had this discretion. It is notable that the Plaintiff went to extraordinary lengths to fulfill its duties in regard to Rule 56, even going so far as to re-submit certain documents, but the Defendant has done nothing of the sort. The Defendant is in default. Accordingly, the Plaintiff hereby respectfully requests that the Court grant Plaintiff's motion.

8

Thank you for your attention.

Very truly yours,

A. Alan Sheffy

Enc: Form 127T, as completed by three independent physicians

## SPINAL CORD INJURIES
Metropolitan Insurance Company
Form 127T-REV1993 DOW

Patient Name: **EDWARD W. ORR**
S. S. Number: **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**
Date of Birth: **3-11-57**

### STATEMENT OF DISABILITY, UNDUE BURDEN, AND LIMITED ABILITY TO PARTICIPATE IN INSURANCE COMPANY DOCUMENTARY AND ORAL PROCEEDINGS

(1) The patient is disabled:

[X] AGREE    [ ] DISAGREE

(2) Invasive testing has already been completed (if available, please attach Form 14B or equivalent):

[X] AGREE    [ ] DISAGREE

(3) The patient requires the following mobility aids:

[ ] a. Wheelchair (standard)
[ ] b. Wheelchair (45-degree recline)
[X] c. Wheelchair (170-degree incline or greater)

(4) The patient cannot sit up for a time period of more than thirty minutes:

[X] AGREE    [ ] DISAGREE

(5) Because of the patient's spinal cord and/or related injuries, continued participation in pretrial documentary and oral proceedings would be injurious to the patient's health:

[X] AGREE    [ ] DISAGREE

Thank you for completing this form.

Signature: *Mark Warner*    Date: **5-1-01**

Name of physician completing this form (please print or type): **Mark Warner**

Taxpayer ID Number: _____

Address: **St. Francis Hospital & Medical Center, 114 Woodland St., Hartford, CT 06105**

Telephone Number: **860-714-4821**

127T-REV1993 DOW

SPINAL CORD INJURIES
Metropolitan Insurance Company
Form 127T-REV1993 DOW

Patient Name: EDWARD VIC ORR
S. S. Number: 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
Date of Birth: 3-11-57

## STATEMENT OF DISABILITY, UNDUE BURDEN, AND LIMITED ABILITY TO PARTICIPATE IN INSURANCE COMPANY DOCUMENTARY AND ORAL PROCEEDINGS

(1) The patient is disabled:
☒ AGREE    ☐ DISAGREE

(2) Invasive testing has already been completed (if available, please attach Form 14B or equivalent):
☒ AGREE    ☐ DISAGREE

(3) The patient requires the following mobility aids:
☐ a. Wheelchair (standard)
☐ b. Wheelchair (45-degree recline)
☒ c. Wheelchair (170-degree incline or greater)

(4) The patient cannot sit up for a time period of more than thirty minutes:
☒ AGREE    ☐ DISAGREE

(5) Because of the patient's spinal cord and/or related injuries, continued participation in pretrial documentary and oral proceedings would be injurious to the patient's health:
☒ AGREE    ☐ DISAGREE

Thank you for completing this form.
Signature: [signature]    Date: 4/30/01
Name of physician completing this form (please print or type):
Taxpayer ID Number: 06-1472743
Address: 13 M. Mikill Rd., Durham, CT 06422    Telephone Number: (860) 349-1054

127T-REV1993 DOW

**SPINAL CORD INJURIES**
Metropolitan Insurance Company
Form 137T-REV1992 DOW

Patient Name: EDWARD ORR
S. S. Number: 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
Date of Birth: 3-11-57

## STATEMENT OF DISABILITY, UNDUE BURDEN, AND LIMITED ABILITY TO PARTICIPATE IN INSURANCE COMPANY DOCUMENTARY AND ORAL PROCEEDINGS

(1) The patient is disabled:
[✓] AGREE   [ ] DISAGREE

(2) Invasive testing has already been completed (if available, please attach Form 14B or equivalent):
[✓] AGREE   [ ] DISAGREE

(3) The patient requires the following mobility aids:
[ ] a. Wheelchair (standard)
[ ] b. Wheelchair (45-degree recline)
[✓] c. Wheelchair (170 degree incline or greater)

(4) The patient cannot sit up for a time period of more than thirty minutes:
[✓] AGREE   [ ] DISAGREE

(5) Because of the patient's spinal cord and/or related injuries, continued participation in pretrial documentary and oral proceedings would be injurious to the patient's health:
[✓] AGREE   [ ] DISAGREE

Thank you for completing this form.

Signature: _____
Name of physician providing this form (please print or type): Mary P. [illegible]
Provider ID Number: _____
Address: 99 W[illegible] St, Hartford, CT 06105
Date: 5/4/2001
Telephone: 860-714-5212

# Sheffy & Mazzaccaro, L.L.P.

35 North Main Street
Southington, CT 06489
Phone: 860-620-9460
Fax:     860-620-9348
Real Estate Fax: 860-620-1978

# FAX COVER SHEET

FAX NUMBER TRANSMITTED TO: 1-203-579-5704

To: Judge Underhill
Of:
From:
Client/Matter: Sheffy & Mazzaccaro, L.L.P.
302 CV 1457
Date: 12/12/03

| DOCUMENTS | NUMBER OF PAGES* |
|---|---|
|  | 12 |

COMMENTS:

The information contained in this facsimile message is information protected by attorney-client and/or the attorney/work product privilege. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by facsimile. If the person actually receiving this facsimile or any other reader of the facsimile is not the named recipient or the employee or agent responsible to deliver it to the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address via U.S. Postal Service.

* NOT COUNTING COVER SHEET. IF YOU DO NOT RECEIVE ALL PAGES, PLEASE TELEPHONE US IMMEDIATELY AT 860-620-9460.